CULPEPPER, Judge.
The plaintiff, Duplessie Landry, seeks Workmen’s Compensation benefits for total and permanent disability arising out of a heart attack which he sustained while working for L. J. Lopez Slaughter House. The defendant, Southern Farm Bureau Casualty Insurance Company, is the employer’s insurer. From an adverse judgment, the defendant appealed.
There is little question that plaintiff suffered a heart attack on the job and that this constituted an accident within the provisions of the Workmen’s Compensation Act. The substantial issue on appeal is whether plaintiff is disabled as a result of the heart attack beyond the date on which Workmen’s Compensation payments were stopped.
The general facts are that plaintiff is 44 years of age and has performed hard manual labor all of his adult life. He started work for L. J. Lopez Slaughter House in 1963. His duties included feeding the animals and then slaughtering, butchering, cutting and wrapping the meat. This required lifting of heavy beef, hogs and sheep and was strenuous work.
Plaintiff had never experienced any heart trouble prior to September 23, 1965, on which date he suffered the attack in question. That morning he had fed the hogs, then sharpened his knives and was butchering a quarter of beef when he felt pain in the left side of his chest, radiating toward the left shoulder. The pain persisted, he broke out in a cold sweat and his face became flushed. His employer took him to Dr. Frank A. Savoy, a general practitioner in Jennings. Dr. Savoy immediately diagnosed a coronary occlusion and entered plaintiff in the hospital, where he remained for five days. Thereafter he remained under the care of Dr. Savoy who instructed him not to return to hard manual labor. Compensation was paid for about nine months and then stopped. This suit followed.
There is no dispute as to the applicable law. The mere occurrence of a heart attack while at work does not entitle an employee to compensation. It must be shown that the attack is causally related to the disability, i. e., that it caused, contributed to or accelerated the heart disease, Seals v. Potlatch Forests, Inc., 151 So.2d 587 (3rd Cir. 1963).
The expert medical testimony in this case is highly contradictory. In a well reasoned opinion, the trial judge evaluates this testimony as follows:
“Dr. Frank Savoy testified that his diagnosis was based partially on an EKG which was read by Dr. Hargroder who reads all EKG tests for the Jennings American Legion Hospital, but primarily on the clinical evidence presented by plaintiff’s appearance at the onset and his gradual improvement. It is Dr. Frank Savoy’s firm conviction that plaintiff is totally and permanently disabled from doing hard work and that any attempt to do hard work will bring on another attack causing death to Mr. Landry.
“On cross-examination Dr. Savoy conceded that plaintiff suffered a small coronary occlusion but explained that there is no such thing as a minor coronary occlusion. Dr. Savoy was also of the opinion that plaintiff does have angina pectoris at this time and that this may be additional cause for a future heart attack. Dr. Savoy testified that lack of *705 oxygen was confirmed by the EKG but there was no positive evidence of muscle damage. The Doctor was suspicious that plaintiff did suffer an infarction but admitted there was no evidence to sustain this suspicion.
“Dr. Bliss K. Shafer of Lafayette, Louisiana, witness for the defendant, testified that his specialty is internal medicine; that he examined plaintiff on one occasion and that was on June 27, 1966; that the chest x-ray was negative; that a cardiogram and a Master’s Double Two-step Exercise Tolerance Test showed routine results. In short Dr. Shafer found no clinical evidence of the existence of a coronary occlusion as of June 27, 1966. He was of the opinion that plaintiff could return to work.
“On cross-examination Dr. Shafer admitted that he did not examine plaintiff for the purpose of treating him but was only concerned with rendering an opinion. The Doctor admitted that the tests are not 100% perfect.
“At the conclusion of the trial counsel for defendant requested that the Court appoint a physician for the purpose of examining and reporting to the Court. The Court immediately appointed Dr. George M. Anderson of Lake Charles, and on May 16, 1967 Dr. Anderson conducted the examination. Dr. Anderson reported that cardiac fluoroscopy revealed no enlargement of the heart; resting electrocardiogram and exercised electrocardiogram were normal. It was the opinion of Dr. Anderson that ‘there is no evidence of heart disease in this man. The “hurting pain” that he described is caused by fatigue of the left Scalinus and Pectoral muscles.’
“As impressive as are both medical reports by the eminently qualified internal medicine specialists, it is this Court’s conclusion that the opinion of the treating physician, who has seen this patient regularly, before, at the time of, and after the accident, is entitled to more weight than is that of the specialists who have each seen him but one time. Dr. Savoy has extensive practice in heart diseases and is currently treating approximately 100 patients.”
The evidence also shows that since his discharge from the hospital plaintiff has remained under the care of Dr. Savoy, whom he sees about once a month. Pursuant to this physician’s instructions, plaintiff takes daily medication, terotrate to dilate the blood vessels and librium to quiet his nerves.
At the time of the trial, plaintiff was working three days a week at auction barns, but this work was not as strenuous as his slaughterhouse employment. It consisted of helping to unload cattle, tag them and run them into pens. This type of work was considered light and was approved by Dr. Savoy.
Under all of the circumstances we are unable to say that the trial judge committed manifest error in accepting the opinion of Dr. Savoy in preference to that of the specialists, Dr. Schafer and Dr. Anderson. Corroborating Dr. Savoy is the fact that plaintiff had never suffered any heart trouble before the accident but since that date he has continued to suffer angina pectoris (heart pain) on strenuous physical exertion. Plaintiff testified that when he does anything too strenuous, as for instance trying to mow his yard on one occasion, his chest begins to hurt. After resting for two or three hours the pain subsides.
Dr. Anderson says this is caused by fatigue of the chest muscles, rather than heart disease, but he is unable to say what caused this condition. Dr. Savoy, who is shown to have considerable experience with heart disease and who followed this case from the very first symptoms is firmly of the opinion that the plaintiff suffered a coronary occlusion which damaged the heart and is the cause of the subsequent episodes of angina on strenuous exertion.
This case presents a close factual question. Ultimately, the basis of our decision *706 is that we find no manifest error on the part of the trial judge in his evaluation of the testimony.
For the reasons assigned, the judgment appealed is affirmed, all appellate costs to be paid by defendant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.